# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GEORGE PASSANTINO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| LINCOLN NATIONAL | ) |
| LIFE INSURANCE COMPANY, | ) |
| | ) |
|     Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, George Passantino, and for his claims and causes of action against Defendant, Lincoln National Life Insurance Company, states as follows:

## PARTIES

1. George Passantino ("Passantino") is a resident and citizen of the State of Missouri.

2. Defendant Lincoln National Life Insurance Company ("Lincoln") is an out-of-state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Lincoln.

## JURISDICTION AND VENUE

3. Passantino brings his claim pursuant to ERISA and 29 U.S.C. § 1001 *et seq.*

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

1

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Passantino's occupation was as a general laborer in the warehouse for National Beef Packing Company, LLC ("National Beef.")

10. Passantino's occupation required him to continuously stand, lift 20-50 pounds, carry 2 feet, and drive a handcart; to frequently walk, reach above his shoulders, bend at the waist, push, and twist; to occasionally carry 20-50 pounds, lift up to 6 feet, and kneel; and to never sit, handle, perform fine motor movements, and perform foot controls.

11. Passantino's occupation additionally required him to wear all required PPE.

12. During Passantino's employment, he became unable to perform the duties of his job due to a combination of physical conditions.

13. Passantino suffers from a combination of impairments, including poor hearing, chronic obstructive pulmonary disease (COPD), emphysema, degenerative joint disease, spondylosis, facet osteoarthritis, retrolisthesis, lumbar disc space narrowing, and chronic back pain. These conditions created restrictions and limitations that were incompatible with the material and substantial duties of his occupation.

14. Passantino's conditions were exacerbated when National Beef began mandating that employees wear a mask over the nose and mouth while working. Passantino's position required a considerable degree of physical exertion. Mask-wearing interfered with Passantino's ability to breathe.

15. On or about August 5, 2020, these conditions took Passantino out of work.

16. At the time of his leave from work Passantino was 60 years old.

17. National Beef sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

18. National Beef sponsored a group short-term disability ("STD") benefits plan ("Plan") for its participating employees.

19. The LTD and STD Plans constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

20. The Plans offered disability benefits to qualifying National Beef's employee Plan participants.

21. At all relevant times, Passantino has been a participant and covered person under the terms of the Plans.

22. Lincoln is the administrator of the Plans.

23. National Beef delegated or attempted to delegate the function of issuing LTD claim determinations to Lincoln.

24. National Beef delegated or attempted to delegate the function of issuing STD claim determinations to Lincoln.

25. National Beef and Lincoln entered into an administrative services contract through which National Beef paid Lincoln for acting as claims administrator.

26. Due to his conditions, Passantino was forced to cease work. His last day of work was August 5, 2020.

27. Passantino applied for STD benefits, which Lincoln denied.

28. Following his leave from work, Passantino applied for Social Security disability benefits.

29. The STD and LTD policies provide that an Insured Person is entitled to disability payments if that person becomes disabled. Disability is defined in the policies in the same way and is as follows:

> **TOTAL DISABILITY** or **TOTALLY DISABLED** means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

30. The policies define "duties" as follows:

> **MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
> (1) are normally required to perform the Insured Person's Own Occupation; and
> (2) could not reasonably be modified or omitted.

31. On February 5, 2021, Passantino requested his STD claim file.

32. On February 17, 2021, Passantino was notified that his STD claim was closed due to not receiving medical records.

33. On February 23, 2022, Lincoln provided Passantino's claim file of approximately 105 pages. The majority of the claim file was a copy of Passantino's STD policy.

34. On February 26, 2021, Passantino initiated a LTD claim with Lincoln.

35. On May 3, 2021, Lincoln denied Passantino's LTD claim.

36. In support of their denial, Lincoln referred Passantino's claim to Dr. Greenhood who authored an independent medical review finding no restrictions or limitations. Dr. Greenhood's only mention of Passantino's occupation was to describe him as a "shipping-and-receiving worker."

37. Lincoln, in their denial, determined that Passantino's general labor occupation corresponded with "Shipping and Receiving Clerk (clerical)." However, Lincoln did not provide any occupational analysis in the claim file they produced. Lincoln's occupational review consisted of a note on March 16, 2021, shortly following the February claim initiation, detailing a potential occupation.

```
3/16/2021 10:15:08 AM   Summary/Assessment/P:1h    initial sap - KA2ZY1 - Mar 16, 2021 10:15:22 am         Requested        KA2ZY1

                        Summary Notes
                        initial sap - KA2ZY1 - Mar 16, 2021 10:15:22 am
                        Assessment Notes

                        Path Notes
                        Summary: EE is a 60 yr old male shipping and receiving worker (likely med) dx- COPD, SOB (COPD exacerbated due
                        to having to wear a mask b/c of covid) dlw: 8/14/2020, dod: 8/15/2020, bcd: 11/13/2020, policy terms in 2 years no
                        cod.
```

38. By April 9, 2021, Lincoln had officially begun describing Passantino's occupation as Shipping and Receiving Clerk.

```
Linda Tobin, RN
Nurse Disability Consultant, Lincoln Financial Group - LJTOBIN - Apr 09, 2021 12:18:13 pm
Referral Date: 4/9/21

Claims Specialist Name: Kassandra Daniels
Phone Number: 402-361-7302
Email Address: Kassandra.Daniels@lfg.com
Submitters Name if different than CS: Linda Tobin RN
Phone Number: 402-361-2870
Email Address: Linda.Tobin@lfg.com

Is this referral COVID related? YES
Referral Type: Standard

Claimant Name (First/Last): George Passantino
Claim Number: 1210026655 LTD  1200101344 STD
Date of Birth: 12/21/1959
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: Central
Customer/Group Name: National Beef Packing Company LLC
Job Title: Shipping and Receiving
Product Type: LTD
```

39. On May 10, 2021, Passantino requested a copy of the claim file from Lincoln.

40. On May 12, 2021, a copy of the requested claim file was received by Passantino. It was approximately 430 pages in length.

41. On review of the claim file, Lincoln had obtained a copy of Passantino's job description.

42. On review of the claim file, Lincoln had not performed a vocational evaluation.

43. Passantino continued to correspond with Lincoln including several emails and phone calls requesting his STD claim status.

44. On June 3, 2021, Lincoln responded stating, "I do not see medical records were sent in for the LTD claim, so we are going to review those records to see if they can be reviewed for the STD claim also." These medical records were obtained by Lincoln prior to the May LTD denial. Lincoln failed to timely review the medical records it obtained.

45. On June 22, 2021, Kala Danushkodi, MD, physically examined Passantino and opined restrictions and limitations.

46. On December 15, 2021, Lincoln denied Passantino's STD claim.

47. On October 16, 2021, Passantino appealed Lincoln's STD and LTD denials.

48. In his October appeal, Passantino argued that Lincoln mischaracterized his occupation as a management and/or clerical and sales position thereby prejudicing his review, that Lincoln failed to perform the adequate medical reviews, and that Lincoln's medical reviewers did not review all his evidence.

49. In support of his appeal, Passantino argued the credibility of Gary Greenwood, MD's report finding no restrictions or limitations, despite Passantino being 60 years old and having degenerative conditions.

50. Passantino further argued that Dr. Greenwood did not describe Passantino's occupation, nor its material duties. Passantino additionally described the mischaracterization surrounding Lincoln's occupation analysis and presented argument regarding how the misunderstanding of his occupation occurred.

51. On October 25, 2021, Lincoln acknowledged the appeal.

52. Following the LTD appeal, Lincoln failed to review its mischaracterized occupational analysis.

53. It its November 19, 2021 review, Lincoln Nurse Disability Consultant, M. Billiejo, RN, failed to perform a second vocational analysis.

54. Billiejo, RN, cited the May 2021 review performed by Dr. Greenhood but failed to refer to or address Dr. Danushkodi's examination.

55. Billiejo, RN, incorrectly stated, "No new or additional medical evidence was provided with the appeal." When, in fact, among other evidence, Passantino provided Dr. Danushkodi's evaluation, which was performed on June 22, 2021.

56. On December 15, 2021, Lincoln again denied Passantino's STD and LTD claims.

57. Lincoln's denial included a single sentence confirming receipt of Dr. Danushkodi's report, but did not address it, nor was it relied upon, nor were the discrepancies between her report and Dr. Greenhood's addressed.

58. Lincoln's denial persisted in mischaracterizing Passantino's occupation, without addressing Passantino's argument that his occupation was mischaracterized in the vocational review allegedly performed. Though Passantino provided his job description to Lincoln, Lincoln's denial continued to ascribe clerical duties to an occupation that was general labor.

59. On December 15, 2021, Passantino requested his claim files from Lincoln.

60. On January 11, 2022, Passantino obtained a copy of his claim files.

61. On June 13, 2022, Passantino requested that Lincoln forgo the second level of appeal.

62. On June 21, 2021, Lincoln acknowledged receipt of Passantino's request, however it indicated that it required the second level of appeal.

63. On July 13, 2022, Lincoln again referred Passantino's claim to a Nurse Disability Consultant T. Phyllis, RN.

64. No vocational review was completed.

65. On July 19, 2022, Lincoln denied Passantino's STD claim.

66. On July 19, 2022, Lincoln denied Passantino's LTD appeal.

67. The Plan and Policy articulate the conditions under which a Plan Participant is entitled to LTD and STD benefits.

68. Both the Employee Retirement Security Act ("ERISA") and the Policy itself require such denials to provide specific information, including:

    a. The specific reason(s) the claim was denied.

    b. Specific reference to the Policy provision(s) on which the denial was based.

    c. Any additional information required for the claim to be reconsidered, and the reason this information is necessary.

    d. If the case of any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically related exclusion or limitation involved in the decision.

    e. A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

69. Passantino has at all relevant times met the definition of "Disability or Disabled" under the Plan and is entitled to benefits.

70. Passantino has exhausted his administrative remedies.

CAUSES OF ACTION

COUNT I
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

71. Passantino realleges the preceding paragraphs as if fully set forth herein.

72. Passantino is entitled to all unpaid and accrued LTD and STD benefits, as Lincoln:

   a. Made an unfavorable decision without substantial evidence;

   b. Failed to perform adequate vocational reviews;

   c. Failed to refer Passantino's claim to qualified medical professionals;

   d. Failed to properly consider Passantino's medical impairments and resulting limitations;

   e. Failed to appropriately and logically respond to Passantino's arguments on appeal;

   f. Failed to provide evidence it relied upon when determining Passantino's claim following proper request; and

   g. Issued an unfavorable decision that was arbitrary and capricious.

73. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Passantino is entitled to an award of actual damages for losses suffered.

74. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

75. Lincoln has not satisfied its obligation to pay Passantino's LTD benefits.

76. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Passantino prays for judgment against Lincoln for unpaid LTD benefits, attorney's fees,

costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

77. Passantino realleges the preceding paragraphs as if fully set forth herein.

78. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

79. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

80. Lincoln, the Plan's designated claims administrator, is a fiduciary.

81. Passantino participated in and benefitted from the Plan as previously indicated.

82. Lincoln's claims management practices are motivated by financial incentives in its administrative services agreement with National Beef.

83. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Lincoln operates under an inherent conflict of interest.

84. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

85. Lincoln breached its fiduciary duty in:

   a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the

administration of disability claims, including its procedures involving coverage and eligibility determinations;

b. Attempted to confound Passantino's claim process for its own benefit by requiring a second level of appeal, refusing upon request to exhaust administrative remedies, and simultaneously representing that Passantino's claims were subject to ERISA;

c. Repeatedly mischaracterizing Passantino's occupation for its own interests;

d. Relying on an implausible medical review to further its own interests; and

e. Refusing to utilize fully executed authorizations to attempt to obtain evidence relevant to Passantino's claim for benefits;

86. Lincoln denied Passantino's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

87. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Passantino and the Plan's participants and beneficiaries generally.

88. Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

89. Lincoln's violations of regulations alone allow Passantino the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

90. Lincoln's violations of federal regulation also subject its decision to *de novo* review.

91. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Passantino prays for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the

11

Case 4:22-cv-00724-BCW   Document 1   Filed 11/04/22   Page 11 of 12

plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Derrick A. Pearce
Derrick A. Pearce, Mo. # 42793
Kyle H. Sciolaro, Mo. #64568
Paul J. Taylor, Mo. #72159
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.883.4142
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ptaylor@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF